IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TAMISHA RAE DUNN,

        Cross-Claimant / Cross-Defendant
         in Interpleader,                            3:16-CV-818-PK

v.                                           OPINION AND
                                          ORDER

KRISTEENA ROBINSON, in her capacity as guardian *ad litem* to I.R.,

        Cross-Defendant / Cross-Claimant
         in Interpleader.

PAPAK, Magistrate Judge:

      Prudential Insurance Company of America ("Prudential") filed this action in interpleader

against Tamisha Rae Dunn (the domestic partner of Prudential's insured at the time of the

insured's decease), minor child I.R. (Prudential's insured's minor daughter), and Kristeena

Robinson ("Robinson," Prudential's insured's former wife) in her capacity as guardian *ad litem* to

Page 1 - OPINION AND ORDER

I.R. on May 10, 2016. By and through its complaint in interpleader, Prudential alleged that prior to his decease, its insured Sean Robinson (Prudential's "insured") received life insurance coverage under a group insurance plan (the "Plan") Prudential issued to CUNA Mutual Group, the insured's then-employer. Prudential further alleged that the insured designated I.R. as his sole beneficiary in connection with Plan benefits on October 15, 2015, that on or around November 5, 2015, the insured expressed his intention to change that designation to name Dunn as his sole beneficiary of Plan benefits, and that on December 25, 2015, the insured died, triggering a $221,000 life insurance benefit under the Plan. Prudential further alleged that on December 31, 2015, the insured's former employer made a claim on the Plan for the benefit on behalf of I.R., and that Dunn made a similar claim, on her own behalf, on February 8, 2016. By and through its complaint, Prudential sought judicial resolution of the competing claims for Plan benefits made on behalf of I.R. and Dunn.

On July 11, 2016, Dunn filed a cross-claim against I.R. and Robinson seeking this court's declaration that she (Dunn) is the sole valid designee for purposes of determining the beneficiary of the insured's Plan benefits, and on that same day Robinson filed a cross-claim against Dunn on I.R.'s behalf seeking this court's declaration that I.R. is the sole valid designee. On August 3, 2016, Prudential deposited money in the amount of the disputed life insurance benefit into escrow for the benefit of the insured's beneficiary, following which it was discharged from this action. This court has subject-matter jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335 and 29 U.S.C. § 1132(a)(2).

Now before the court are Robinson's motion (#22) for summary judgment and Dunn's cross-motion (#23) for summary judgment as to the remaining parties' competing claims for

Page 2 - OPINION AND ORDER

declaratory relief. I have considered the motion, oral argument on behalf of the parties, and all of

the pleadings and papers on file. For the reasons set forth below, Robinson's motion (#22) for

summary judgment is granted, Dunn's motion (#23) for summary judgment is denied, and this

court declares that I.R. is the insured's sole beneficiary for the purpose of Plan life insurance

benefits, and is the person entitled to receive the entirety of the proceeds of those benefits from

the escrow account into which they have been deposited.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed"

must support that position either by citation to specific evidence of record "including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials," by showing that the evidence of record does not establish either the presence or

absence of such a dispute, or by showing that an opposing party is unable to produce sufficient

admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c).

The substantive law governing a claim or defense determines whether a fact is material. *See*

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g.,*

*Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116

S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the

United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See id.*

## FACTUAL BACKGROUND

### I.    The Parties

Dunn is an Oregon resident who at the time of the insured's decease was his domestic partner. I.R. is the insured's minor daughter. Robinson is I.R.'s mother and guardian *ad litem*, and was the insured's ex-wife prior to his decease.

### II.    Material Factual History[1]

At all material times prior to his decease, the insured was employed by the CUNA Mutual Group, also known as CMFG Life Insurance Company ("CUNA"). *See* Dunn's Motion (#23) for Summary Judgment, Exh. 2 (Deposition of Brenda Schmidt (collectively with Robinson's Motion (#22) for Summary Judgment, Exh. A, "Schmidt Depo."), 6:21-23. During the tenure of his

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

employment, CUNA provided the insured with a basic life insurance policy pursuant to an

Employee Retirement Income Security Act ("ERISA") plan (the Plan), in connection with which

CUNA was the Plan administrator. *See id.*, 7:2 – 8:4; *see also* Dunn's Motion (#23) for

Summary Judgment, Exh. 4 ("Plan Summary"); Schmidt Depo., Exh. 2 ("Plan Document").

Pursuant to the Plan, Prudential agreed to pay the insured's designated beneficiary a benefit of

twice the insured's annual salary in the event of the insured's death prior to the end of the month

in which he attained age 70. *See* Plan Summary at 4. The Plan provided that the insured could

"change the [designated] Beneficiary at any time without the consent of the present Beneficiary,

unless [he] ha[d] made an irrevocable choice of Beneficiary." *Id.* at 27. It is undisputed that the

insured herein never made an irrevocable choice of beneficiary at any material time. *See* Schmidt

Depo., 12:19-25. The Plan further provided that such a change "must be filed through [CUNA],"

and that such a change would "take effect on the date the form is signed." Plan Summary at 27.

It is undisputed that, at the time of his death, the designated beneficiary of the insured herein

became entitled to a life insurance benefit in the amount of $221,000 pursuant to the Plan.

The Plan expressly provided that:

> **The Plan Administrator shall have full authority to control and manage the operation of the administration of the Plan.** The administration of the Plan shall be under the supervision of the Plan Administrator as indicated in the resolutions adopted from time to time by the Board of Directors of CUNA Mutual Holding Company. It shall be a principal duty of the Plan Administrator to see that the Plan is carried out, in accordance with its terms, for the exclusive benefit of persons entitled to participate in the Plan without discrimination among them. **The Plan Administrator will have full power to administer the Plan in all of its details, subject to applicable requirements of law. For this purpose, the Administrator's powers will include, but not be limited to, the following authority, including discretionary authority, in addition to all other powers provided by this Plan:**

(1)    **To make determinations regarding** initial and continuing **eligibility** to participate in the Plan or **to receive benefits** or the amount of benefits available **under th[e] Plan;**

(2)    **To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan;**

(3)    **To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan;** [and]

(4)    **To decide all questions concerning the Plan.** . . .

Plan Document, § 6.1 (emphasis supplied).

CUNA, in its capacity as the Plan administrator, recognized two different mechanisms by and through which Plan participants like the insured could make changes to their Plan beneficiary designations. *See* Schmidt Depo., 18:6-8, 31:21 – 32:4, 32:9-14, 36:22 – 37:14, 41:1-18, 42:7-12. In the event a Plan participant expressed an intention to effect a change to a Plan beneficiary designation in connection with and in the course of CUNA's open enrollment process, CUNA treated the change of beneficiary as taking effect as of the first day of the following calendar year, together with any other changes effected in connection with and in the course of open enrollment, whereas in the event a Plan beneficiary expressed an intention to effect a change to a Plan beneficiary without using forms expressly intended to effect benefit changes in connection with open enrollment – specifically, either by sending an email message to a CUNA human resources employee or by using CUNA's web tool designed for making beneficiary designation changes outside the open enrollment process – CUNA treated the change of beneficiary as taking effect immediately. *See id.*

On October 15, 2015, the insured sent an email message to a CUNA human resources

Page 6 - OPINION AND ORDER

employee advising that his previous domestic partnership with his former Plan beneficiary had terminated, and requesting (*inter alia*) that, "[f]or the time being," CUNA change his primary Plan beneficiary for purposes of life insurance benefits from his former domestic partner to I.R. *See id.*, Exh. 4; *see also id.*, 21:17 – 23:6.  CUNA effected the requested change that same day. *See id.*, Exh. 5; *see also id.*, 23:7 – 24:5.

Subsequently, CUNA held an open enrollment period from October 26, 2015, through November 6, 2015, in connection with employee benefits for calendar year 2016. *See* Dunn's Motion (#23) for Summary Judgment, Exh. 5 (CUNA's "Open Enrollment Announcement").  On or around November 5, 2015, and using a form provided by CUNA for making changes to benefits in connection with its open enrollment period, the insured requested that CUNA change his primary Plan beneficiary for purposes of life insurance benefits from I.R. to Dunn. *See* Schmidt Depo., 25:1 – 29:2, 47:14-20, Exh. 6, Exh. 7.  Each page of the form the insured used for this purpose was clearly marked with the words:  "Event Date:  01/01/2016," *see id.*, Exh. 7, which indicated to CUNA that changes elected by and through that form would not take effect until January 1, 2016, *see id.*, 31:7-14, 37:9-14.  In support of his request to designate Dunn as his primary Plan beneficiary, on December 9, 2015, the insured submitted to CUNA an Affidavit/Certification of Domestic Partnership by and through which he certified that, within the previous 31-day period, he had established a domestic partnership with Dunn. *See* Dunn's Motion (#23) for Summary Judgment, Exh. 7 ("Domestic Partnership Certification").

It is undisputed that the insured died on December 25, 2015. *See* Complaint, ¶ 11.  It is further undisputed that on December 31, 2015, CUNA in its capacity as the Plan administrator made a claim on Prudential for life insurance benefits on behalf of I.R. *See id.*, ¶ 13.  CUNA's

Page 7 - OPINION AND ORDER

application for life insurance benefits under the Plan expressly indicated that I.R. was the

insured's designated beneficiary at the time of his decease, and further expressly referred to Dunn

as the insured's domestic partner, reflecting that CUNA had updated its records in connection

with the insured's Domestic Partnership Certification of December 9, 2015, but had treated the

insured's election of November 5, 2015, to change his Plan beneficiary to Dunn as taking effect

as of January 1, 2016, and not before. *See id.*, Exh. B ("CUNA's Application for Group Life

Claim" dated December 31, 2015). It is further undisputed that, by and through a letter from her

counsel, Dunn requested life insurance benefits under the Plan on her own behalf on February 8,

2016. *See id.*, Exh. C ("Dunn's Letter Application for Group Life Claim"). Finally, it is

undisputed that, after Prudential filed this interpleader action and after CUNA was made aware

of the competing claims of I.R. and Dunn, CUNA's corporate representative testified pursuant to

Federal Civil Procedure Rule 30(b)(6) that CUNA did not give immediate effect to expressions

of intent to effect changes to beneficiary designations when made by and through open

enrollment forms, but rather treated such expressions of intent as taking effect as of the first day

of the next following calendar year. *See* Schmidt Depo., 18:6-8, 31:21 – 32:4, 32:9-14, 36:22 –

37:14, 41:1-18, 42:7-12.

## ANALYSIS

The parties do not dispute any of the operative facts. The parties' sole area of

disagreement is in connection with the question whether CUNA was required under the Plan to

treat the insured's change of beneficiary request of November 5, 2015, as taking effect

immediately, or whether it was a proper exercise of CUNA's discretion as the Plan administrator

to treat that change as taking effect January 1, 2016, together with the insured's other benefits

elections made in the course of CUNA's open enrollment process.

The beneficiary of an ERISA plan is empowered to bring a civil action, *inter alia*, either to recover benefits due to him or her under the plan, or to enforce his or her rights under the plan. *See* 29 U.S.C. § 1132(a)(1). Fiduciaries of ERISA plans are required to discharge their duties in connection with such plans "solely in the interest of the participants and beneficiaries" of such plans and "for the exclusive purpose" of "providing benefits to participants and their beneficiaries" and defraying administrative costs, 29 U.S.C. § 1104(a)(1)(A), and must discharge such duties additionally "in accordance with the documents and instruments governing" such plans, 29 U.S.C. § 1104(a)(1)(D), *see also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 288 (2009).

Where an ERISA plan expressly confers discretion on a plan administrator with respect to management of the ERISA plan, the administrator's exercise of discretion "is not subject to control by the court except to prevent an abuse by the [administrator] of [its] discretion." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *see also Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 108, 116 (2008); *Conkright v. Frommert*, 559 U.S. 506, 513 (2010). However, applicable Ninth Circuit jurisprudence establishes that, even where an ERISA plan contains an express grant of discretion, not every determination made by an ERISA plan administrator constitutes an exercise of that discretion warranting deferential review. *See Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105-1106 (9th Cir. 2003). The *Jebian* court found that an ERISA plan administrator does not exercise its discretion for purposes of determining whether review of its discretion will be *de novo* or for abuse of discretion when it acts in accordance with a plan provision calling for an

Page 9 - OPINION AND ORDER

"automatic decision," *id.*, while the Ninth Circuit elsewhere found that an ERISA plan administrator's decision is subject to *de novo* review notwithstanding a grant of discretion where the administrator "utterly fails to follow applicable procedures," *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 959 (9th Cir. 2006), *see also id.* at 971 ("When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits. We do so because, under *Firestone*, a plan administrator's decision is entitled to deference only when the administrator exercises discretion that the plan grants as a matter of contract.").

Under the *Firestone* abuse of discretion standard, the "test for abuse of discretion . . . is whether '[the court is] left with a definite and firm conviction that a mistake has been committed.'" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011), *quoting United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (*en banc*). In making that determination, the courts of the Ninth Circuit consider whether the administrator's discretionary determination was "'(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.*, *quoting Hinkson*, 585 F.3d at 1262. These considerations apply both to the plan administrator's factual determinations and to the administrator's ultimate application of law to fact. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1069-1070 (9th Cir. 1999).

It follows from the foregoing that the crux of the parties' dispute is over whether CUNA formally exercised its discretion as the Plan administrator to determine that I.R. was in fact the insured's designee as of December 25, 2015, notwithstanding the insured's contrary expression of

intent of November 5, 2015, and if it did so, whether that exercise of discretion constituted abuse of discretion under the *Firestone* standard. As to the question whether CUNA exercised discretion under the Plan when it determined that I.R. was the insured's sole beneficiary for basic life insurance benefits, while the evidence of record presents a close legal question, I find that it did so. First, CUNA exercised discretion "[t]o make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan," Plan Document, § 6.1, when, in addition to providing Plan participants with mechanisms for effecting immediate changes to beneficiary designations as required under the terms of the Plan, *see* Plan Summary at 27, it elected to allow Plan participants alternatively to effect deferred changes to beneficiary designations by expressing their intention to make such changes at a specified future date, through the forms designed for use in connection with the open enrollment process. That election was not such a flagrant violation of the terms of the Plan or made in such utter disregard of the underlying purpose of the Plan as to fall outside CUNA's discretionary authority pursuant to *Abatie, supra*, because it did not foreclose any Plan participant from effecting immediate changes to beneficiary designations at any time during the calendar year, including during the open enrollment process, either by using CUNA's approved form for effecting immediate beneficiary designation changes or by sending an email message to CUNA human resources requesting an immediate change, and because it provided Plan participants with increased flexibility in the exercise of their rights under the Plan without curtailing any such right, in keeping with CUNA's "principal duty . . . to see that the Plan is carried out, in accordance with its terms, for the exclusive benefit of persons entitled to participate in the Plan. . . ." Plan Document, § 6.1.

Page 11 - OPINION AND ORDER

Second, CUNA exercised discretion "[t]o make determinations regarding . . . eligibility . . . to receive benefits" under the Plan and "[t]o interpret the Plan," *id.*, when it determined that the insured had, by using open enrollment forms to request a change in his beneficiary designation, requested a change of beneficiary to take effect as of January 1, 2016, both on or prior to December 31, 2015, when CUNA applied for benefits on behalf of I.R. and subsequently, after this litigation had been initiated, when CUNA's corporate representative testified in deposition that under CUNA's rules of Plan administration, it construed changes to beneficiary designations made by and through open enrollment forms effectively as expressions of intent to make such changes as of the first day of the next following calendar year. Again, CUNA's election tended to further the purpose of the Plan and did not so flagrantly violate any Plan provision as to be outside its discretionary authority, in that it provided plan participants with flexibility in making changes to beneficiary designations without depriving them of any rights mandated by the Plan.

Third, at the time CUNA applied for life insurance benefits on I.R.'s behalf, describing I.R. as the insured's designee, it exercised discretion "[t]o make determinations regarding . . . eligibility . . . to receive benefits" under the Plan, "[t]o interpret the Plan," and "[t]o decide all questions concerning the Plan," Plan Document, § 6.1, in that it had received both the insured's election to change his Plan beneficiary to Dunn made by and through open enrollment forms and the insured's advice that he had formed a domestic relationship with Dunn, and had elected to defer the effectiveness of the change of beneficiary designation until the listed "Event Date" of January 1, 2016, while giving immediate effect to the insured's Domestic Partnership Certification and immediately updating its records accordingly. Once again, for the same reasons

discussed above in connection with CUNA's elections to provide Plan participants with a mechanism for requesting deferred changes to Plan beneficiaries and to construe the insured's election of November 5, 2015, to change his Plan beneficiary to Dunn as taking effect January 1, 2016, this election was within CUNA's discretionary authority as the Plan administrator.

Dunn further argues that, even if CUNA intentionally exercised its discretion as the Plan administrator to determine that I.R. was the insured's beneficiary as of December 25, 2015, that exercise constituted abuse of discretion in light of the Plan language mandating that changes to beneficiary designations take effect as of the date the appropriate form is signed by the Plan participant, *see* Plan Summary at 27. As noted above, CUNA's exercise of discretion will not be disturbed unless it is illogical, implausible, or without factual basis. *See Salomaa*, 642 F.3d at 676. In light of the facts that CUNA's provision to Plan participants of a mechanism for effecting deferred changes to beneficiary designations did not impair the ability of Plan participants to make immediate changes to beneficiary designations at any time and that the insured here was aware of (and had successfully availed himself of) one of the mechanisms for effecting immediate designation changes but chose not to use either of those mechanisms in connection with his election of November 5, 2015, in favor of the open enrollment process, CUNA's determination that I.R. was the insured's sole beneficiary as of December 25, 2015, was not illogical, implausible, or baseless. As such, although I do not offer any opinion as to whether the same result would obtain under *de novo* review of the Plan administrator's determination, I find that this court is without authority to overturn CUNA's determination for abuse of discretion. *See id.*

Page 13 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, Robinson's motion (#22) for summary judgment is granted, Dunn's motion (#23) for summary judgment is denied, and this court declares that I.R. is the insured's sole beneficiary for the purpose of Plan life insurance benefits, and is the person entitled to receive the entirety of the proceeds of those benefits from the escrow account into which they have been deposited. A final judgment will be prepared.

Dated this 17th day of March, 2017.

Honorable Paul Papak
United States Magistrate Judge